NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0198n.06

No. 05-6669

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 29, 2010
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| THOMAS D. SMITH, | ) | |
| Petitioner-Appellant, | ) ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| JACK MORGAN, Warden, | ) ) | |
| Respondent-Appellee. | ) ) | |

Before: DAUGHTREY, COLE, and GIBBONS, Circuit Judges.

**PER CURIAM.** Thomas D. Smith, a Tennessee state inmate, appeals the district court's dismissal of his petition for a writ of habeas corpus filed pursuant to the provisions of 28 U.S.C. § 2254. Before this court, Smith alleges that the district judge erred in concluding that he had failed to exhaust the state-court remedies available to him to challenge the proportionality and the legality of the 60-year prison sentence imposed upon him for possessing, within 1000 feet of a school, more than 0.5 grams of crack cocaine with the intent to sell the controlled substance. We agree that Smith adequately presented his proportionality challenge in state court and, therefore, find it necessary to reverse the district court's judgment as to that issue and remand the matter for consideration of the merits of the proportionality claim. We further conclude, however, that Smith failed to "fairly present" a federal constitutional issue to the state post-conviction court regarding his

challenge to the legality of his sentence "under Tennessee law." Consequently, we affirm that portion of the district court's judgment dismissing the petitioner's illegal-sentence claim.

## FACTUAL AND PROCEDURAL BACKGROUND

Thomas Smith was arrested in Springfield, Tennessee, while sitting in a car parked at a housing project located within 1,000 feet of a local elementary school. At that time, he possessed 1.4 grams of crack cocaine that he admitted he hoped to sell in order to pay his utility bills. Pursuant to the provisions of Tennessee's Drug-Free School Zone Act, Tenn. Code Ann. § 39-17-432, the prosecution filed notice of its intent to seek the enhanced punishment allowed under the state legislation.

At the conclusion of the petitioner's trial, the jury found Smith guilty of possession with intent to sell. Then, as noted by the Tennessee Court of Criminal Appeals:

> [T]he Drug-Free School Zone Act enhanced the class B felony offense to a class A felony for purposes of sentencing. Tenn. Code Ann. § 39-17-417(a)(4), (c)(1) (1996); Tenn. Code Ann. § 39-17-432(b). Additionally, the Act required [Smith] to serve the minimum sentence within his appropriate range prior to the operation of sentence reduction credits or eligibility for parole or early release due to overcrowding. Tenn. Code Ann. § 39-17-432(c)-(e). The State established at the sentencing hearing that [Smith's] criminal record included six class C felony, drug-related offenses, and one class B felony, drug-related offense. Accordingly, the trial court sentenced the appellant as a career offender who had committed a class A felony, Tenn. Code Ann. § 40-35-108(c) (1997), Tenn. Code Ann. § 40-35-112(c)(1) (1997), imposing a . . . day-for-day term of sixty years incarceration in the Tennessee Department of Correction.

*State v. Smith*, 48 S.W.3d 159, 162 (Tenn. Crim. App. 2000).

With the assistance of counsel, Smith filed a direct appeal to the Tennessee Court of Criminal Appeals, challenging only the constitutionality of Tenn. Code Ann. § 39-17-432, the Drug-Free School Zone Act. In making that challenge, the petitioner argued, in part:

> The intent of Tenn. Code Ann. sec. 39-17-432 was not to have law enforcement personnel lure unsuspecting defendants into a "hidden ring" which changes class B felonies to class A felonies for day-for-day service. While drug sales are a high priority issue for police, making the crime of having 9-10 rocks of crack cocaine amount to a 15 year "flat" sentence – best case scenario; or in Mr. Smith's case, 60 years, is in violation of the XIth Amendment,[1] Art. I sec. 13 of the Tennessee Constitution and *Furman v. Georgia*, 408 U.S. 238 (1972) as cruel and unusual punishment far exceeding the crime. (*See, State v. Blanton*, 975 S.W.2d 269, 286 (Tenn. 1998).)

In response, the state recognized that the Tennessee courts and the United States Supreme Court utilized the same evaluative test in addressing challenges to the proportionality of criminal sentences. Citing *State v. Harris*, 844 S.W.2d 601, 603 (Tenn. 1992), for that proposition, the state noted in its brief to the Tennessee Court of Criminal Appeals:

> Initially, the sentence must be compared to the crime committed. *Id.* "Unless this threshold comparison leads to an inference of gross disproportionality, the inquiry ends – the sentence is constitutional." *Id.* The Court instructed that if an inference arises, the analysis requires a

---

[1]Even the State of Tennessee, in its response brief, understood that Smith meant to refer, not to the Eleventh Amendment to the United States Constitution, but to "U.S. Const. amend. VIII; U.S. Const. amend. XIV."

comparison of the sentences imposed on other criminals in the same and other jurisdictions.

The state also argued that the Act's enhancement provisions were simply that and not, as Smith argued, another substantive offense that was applied to his situation without the necessary procedural and constitutional safeguards. The intermediate state court concurred with the prosecution, concluding that the Drug-Free School Zone Act is clearly an "enhancement statute," *Smith*, 48 S.W.3d at 167, and that Smith's sentence did not raise "an inference of gross disproportionality even though the Act precludes reduction credits, parole, or early release due to overcrowding." *Id.* at 173.

Smith applied to the Tennessee Supreme Court for permission to appeal, again challenging the validity of Tenn. Code Ann. § 39-17-432 "under both the State and federal constitutions." The court denied the application, however, and Smith, then acting *pro se*, timely petitioned the state trial court for post-conviction relief.

In his post-conviction petition, Smith raised numerous issues, including a claim that the trial judge failed to reduce each word of the jury instructions to writing, that trial counsel was ineffective in failing to raise in the motion for new trial a claim of insufficient evidence, that trial counsel was ineffective in failing to file a motion to suppress a search of Smith's person, that Smith's sentence was disproportionate to comparable crimes, and that the petitioner's sentence was illegal because of the multiple enhancements added to the base punishment. After a hearing, the court issued a brief order, granting Smith a new trial on

the basis of the trial judge's "fail[ure] to provide the jury with all jury charges in written form and fail[ure] to fully explain the law pursuant to a jury question request."

The state appealed the trial court's grant of post-conviction relief to the Court of Criminal Appeals. That court reversed the order, holding that the jury charge issue had been "waived by the failure to pursue the objection at trial and preserve the issue for the direct appeal." *Smith v. State*, No. M2002-02181-CCA-R3-CD, 2003 WL 21946727, at *4 (Tenn. Crim. App. Aug. 12, 2003). Still acting *pro se*, Smith followed that intermediate court decision with another application for permission to appeal to the state supreme court, an application alleging that the intermediate appellate court had "err[ed] in overturning a decision of the Trial Court that found prejudicial constitutional error in the original trial judge not writing down jury instructions." The Tennessee Supreme Court denied permission to appeal, effectively foreclosing the possibility of Smith's securing relief from the Tennessee state courts.

Smith next filed a timely petition for a writ of habeas corpus in federal court. "[L]iberally construing the petition and the Memorandum of Law in support of the petition, the Court glean[ed] six claims for relief." *Smith v. Morgan*, No. 3:04-0775, 2005 WL 2290998, at *1 (M.D. Tenn. Sept. 20, 2005). The district court identified those claims as follows:

> (1) the Drug-Free School Zone Act, codified as Tenn. Code Ann. § 39-17-432, is unconstitutionally vague, overbroad, and excessive in punishment;

(2) the trial judge erred when he orally gave the jury a supplemental instruction but neglected to reduce the instruction to writing;

(3) the petitioner was denied the effective assistance of counsel when his attorneys failed to preserve for appellate review a supplemental jury instruction issue;

(4) the petitioner's sentence is disproportionate to other more serious crimes such as child molestation and second degree murder;

(5) the petitioner was illegally sentenced under Tennessee law; and

(6) the petitioner was denied the effective assistance of counsel when his attorney failed to file a motion to suppress the drugs found on him.

*Id.* (citations and footnotes omitted).

Eventually, the district judge granted the state's motion to dismiss the petition. In doing so, the court held that claims 1, 3, and 6 had been fully adjudicated by the state court and that the decision of the highest state court to examine the matter was "neither contrary to nor an unreasonable application of federal law." *Id.* at *4. The court further concluded that claim 2 involved only a question of state law and thus was not cognizable in a federal habeas proceeding. *See id.* at *2. Finally, the district judge denied Smith habeas relief on grounds 4 and 5 because "these issues were never offered to the state courts at any level for consideration" and were, therefore, not exhausted in the state system. *Id.* at 3. Additionally, according to the district court, the petitioner failed to establish cause and prejudice for such failure to present the claims at the appropriate time to the proper tribunals. *See id.*

Again proceeding without the assistance of legal counsel, the petitioner filed a notice of appeal that this court "construed as a request for a certificate of appealability pursuant to Fed. R. App. P. 22(b). The certificate necessary to proceed with an appeal was granted only as to issues 4 and 5 concerning "the proportionality and legality arguments regarding his sentences." We also granted Smith's request for leave to proceed *in forma pauperis* and appointed legal counsel to assist in this appeal.

### *DISCUSSION*

Pursuant to the provisions of 28 U.S.C. § 2254(b)(1)(A), a petition for a writ of habeas corpus may not be granted unless "the applicant has exhausted the remedies available in the courts of the State." The respondent maintains that such exhaustion of remedies has not occurred here because, as claimed by the district court, the issues concerning the proportionality and legality of Smith's sentence "were *never* offered to the state courts at any level for consideration." *Smith v. Morgan*, 2005 WL 2290998, at *3 (emphasis added). This assertion is simply not supported by the record.

### *Proportionality of Sentence*

Throughout the history of this litigation, Smith has contended that the 60-year prison term imposed upon him was so disproportionate to the crime he committed and to the punishments related to other, more serious crimes that his sentence violated the federal constitutional prohibition against cruel and unusual punishments. In his direct appeal, for

example, Smith challenged the constitutionality of that sentence, alleging that it was excessive and that it constituted "cruel and unusual punishment far exceeding the crime." Likewise, in his post-conviction petition, Smith alleged that the sentence was "disproportionate in comparative crimes." Finally, in his *pro se* habeas corpus petition, Smith again highlighted, albeit inartfully, the fact that he received a more severe sentence than would have some child molesters, second-degree murderers, or individuals who actually sold crack cocaine to school children more than 1000 feet from school grounds.

Nevertheless, the state makes three arguments to support its contention that Smith failed to exhaust his state-court remedies on this issue. First, after pointing out that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), the state contends that Smith failed to abide by this mandate when he did not specifically include the proportionality issue in his application for permission to appeal to the Tennessee Supreme Court on direct appeal. According to the state, Tennessee's "creation of a discretionary review system does not, without more, make review in the [Tennessee] Supreme Court unavailable [to Smith]." *Id.* at 848.

However, Rule 39 of Rules of the Supreme Court of the State of Tennessee states unambiguously, in part:

> In all appeals from criminal convictions or post-conviction relief matters from and after July 1, 1967, a litigant shall not be required to petition for rehearing or to file an application for permission to appeal to the Supreme Court of Tennessee following an adverse decision of the Court of Criminal Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when the claim has been presented to the Court of Criminal Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies available for that claim.

As we noted in *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003), although such a rule does not "completely remove[ ] state supreme court review as an option for litigants," it does "establish that Supreme Court review is no longer part of the normal course of review for criminal appeals, and is not necessary for exhaustion of 'all available state remedies.'" "[W]hen remedies are taken outside of the normal criminal review process, those remedies become 'extraordinary:' technically available to the litigant but not required to be exhausted." *Id*. at 403 (citing *O'Sullivan*, 526 U.S. at 844).

The holding of *Adams* also promotes a principle deemed essential to the *O'Sullivan* ruling: comity between the state and federal governments. *Adams* not only requires the federal courts to ensure that the state courts have the first opportunity to review and evaluate legal claims that might undermine a state criminal conviction, but also mandates that the federal courts respect the duly-promulgated rule of the Tennessee Supreme Court that recognizes the law and policy-making function of that court and the court's desire not to be entangled in the business of simple error correction. Moreover, *Adams* controls the question in this circuit, and we are not at liberty to disregard its holding. *See, e.g., United*

*States v. Kirchhof*, 505 F.3d 409, 414 (6th Cir. 2007) (one panel of this court may not overrule the decision of another panel absent contradictory, intervening rulings from the Supreme Court or *en banc* review). The respondent's assertion that Smith failed to exhaust his state-court remedies by choosing not to seek permission to appeal his sentencing issue to the Tennessee Supreme Court is thus patently without merit.

Perhaps recognizing the lack of precedential support for its initial exhaustion argument, the state next contends that Smith's proportionality claim has been procedurally defaulted because the petitioner did not raise that issue during the post-conviction relief process before either the Tennessee Court of Criminal Appeals or the Tennessee Supreme Court. Once again, however, we note that our decision in *Adams* absolves Smith from any requirement to raise the issue in an application for permission to appeal to the state supreme court. The state's assertions regarding the petitioner's failure to present the post-conviction proportionality argument to the Court of Criminal Appeals are, moreover, equally ill-conceived.

In his *pro se* post-conviction petition and accompanying memorandum of law, Smith alleged numerous errors in the conduct and results of his trial. In a written order, the state trial court judge indicated that he considered "the petition well-founded," although he granted relief only "on the issue that the original Trial Judge failed to provide the jury with all jury charges in written form and failed to fully explain the law pursuant to a jury question request." As a result, the trial court overturned Smith's conviction outright and granted the

petitioner a new trial. Because the grant of relief was not conditional, Smith's conviction and his prison sentence became, at least for a short time, null and void. As a result, Smith would have had no need to appeal the propriety of that sentence to the appellate court. The state did challenge the jury-charge determination, however, and that sole issue became the focus of the appeal. Smith's decision not to seek an advisory opinion from the Tennessee courts thus cannot be considered the equivalent of a failure to exhaust available state remedies.

Finally, the respondent argues that Smith did not raise the identical proportionality arguments on direct appeal and when seeking a writ of habeas corpus. Specifically, the respondent points out that the petitioner's direct appeal argument was focused upon the allegation that the 60-year, day-for-day punishment was "disproportionate to his offense." In the habeas proceedings, on the other hand, Smith focused "on the severity of his sentence as compared with that imposed for other crimes in Tennessee." Although the respondent is technically correct in this assertion, what the argument fails to recognize is that these iterations are merely separate components of a single analytical framework. In *Solem v. Helm*, 463 U.S. 277, 291-92 (1983), the United States Supreme Court explained that a reviewing court's proportionality analysis should be guided by three objective factors: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals [committing other crimes] in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."

The tripartite analysis of *Solem v. Helm* has, over the years, been transformed into what amounts to a single-factor analysis. In his concurring opinion in *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991), Justice Kennedy reemphasized that "[t]he Eighth Amendment does not require strict proportionality between crime and sentence."[2] Instead, the constitutional guarantee "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* Despite that apparent emphasis on only the first of the three *Solem v. Helm* criteria, however, Justice Kennedy continued to explain that the intra-jurisdictional and inter-jurisdictional analyses called for in the second and third factors of the *Helm* test have not been totally abandoned. Rather, those inquiries should now be considered "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* at 1005.

Hence, regardless of whether we focus upon the earlier pronouncements of *Helm* or the later interpretative gloss placed on that decision by Justice Kennedy's concurrence in *Harmelin*, Smith's framing of the issues raised in state court and in federal court did not result in the presentation of two separate claims. Instead, the petitioner's language choices simply highlighted different aspects of the analysis necessary to provide a comprehensive review of Smith's Eighth Amendment claim. Because the same basic constitutional claim was presented both during the state-court proceedings and in Smith's

---

[2]As we recently observed, "In the context of determining 'clearly established' law for purposes of 28 U.S.C. § 2254(d)(1), the Supreme Court has . . . focused upon Justice Kennedy's opinion in *Harmelin*." *United States v. Jones*, 569 F.3d 569, 573 n.1 (6th Cir. 2009) (citing *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)).

habeas corpus petition, the petitioner has, in fact, exhausted the state remedies available to address his constitutional issues.

### Legality of Sentence Under Tennessee Law

In his habeas corpus petition and memorandum of law, Smith also contended that the state trial court erroneously enhanced his sentence by changing the classification of the offense from a Class B felony to a Class A felony and by then also imposing career offender impediments upon him. The district court found, and the state now argues, that this claim was also procedurally defaulted for failure to exhaust all available state remedies. In particular, the respondent complains both that Smith did not present this issue during the state's post-conviction appeal to the Tennessee Court of Criminal Appeals and that the petitioner cited no federal case law or federal constitutional provisions in the post-conviction petition presenting his claim, thus failing to present fairly the issue at every level of the proceedings.

As discussed previously, Smith had no need to seek an intermediate appellate court pronouncement on his sentence during the post-conviction phase of this litigation. The trial judge had previously granted Smith the post-conviction relief he sought – reversal of his conviction and a remand for a new trial. As a result, no sentence, legitimate or otherwise, was technically in force at that time and subject to challenge. Moreover, because Rule 39 of the Rules of the Supreme Court of the State of Tennessee does not require an application for permission to appeal to the state's highest tribunal in order to exhaust state

remedies, *see Adams*, 330 F.3d at 402-03, the state cannot legitimately argue that the lack of mention of this sentencing issue in appellate filings alone forecloses federal habeas corpus relief.

The petitioner was still required, however, to raise in his post-conviction petition a federal constitutional issue regarding the legality of his sentence. In order that such an issue be "fairly presented," a petitioner must have alerted the court to the federal nature of the claim. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Nevertheless, Smith's post-conviction petition and memorandum of law did not refer to the United States Constitution in the presentation of the issue alleging the "illegality" of the sentence "under Tennessee law." The petition and memorandum also did not contain citations to federal constitutional decisions or set forth facts that clearly implicated such federal protections.

In *Baldwin*, the United States Supreme Court stated:

> [O]rdinarily a state prisoner does not "fairly present" a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so.

*Id.* at 32. Because just such collateral sources must be consulted in this case to divine the federal constitutional basis of Smith's sentence-legality challenge, and because the writ of habeas corpus is not available to remedy errors of only state law, *see* 28 U.S.C. § 2254(a), the district court properly dismissed this issue for failure to exhaust appropriate remedies.

## **CONCLUSION**

In accordance with applicable law, the petitioner in this case exhausted the state-court remedies available in his proportionality challenge to his sentence. Hence, the district court's dismissal of this claim on the basis of procedural default was improper. We therefore REVERSE the judgment of the district court regarding Smith's fourth claim for relief. Because no federal court has yet issued a substantive ruling on this habeas corpus claim, we REMAND the matter to the district court for a ruling on the merits of Smith's proportionality allegation. However, because Smith did not "fairly present" a federal constitutional claim regarding the legality of his sentence under Tennessee law, we AFFIRM the portion of the district court judgment that dismissed the petitioner's fifth claim for habeas corpus relief.